**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 98-40881
_____

STEVIE DON JACKSON,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

July 18, 2000

Before WIENER and STEWART, Circuit Judges, and LITTLE,* District
Judge.

WIENER, Circuit Judge:

Petitioner-Appellant Stevie Don Jackson was convicted of

aggravated assaulted in Texas state court.  After his application

for a federal writ of habeas corpus was denied by the district

court, we granted a certificate of appealability on the issue

"whether Jackson's attorney rendered ineffective assistance of

counsel because he failed to file a timely motion for rehearing

from Jackson's first appeal of right."  Concluding that the failure

of Jackson's counsel to file a motion for rehearing or,

---

* District Judge of the Western District of Louisiana, sitting
by designation.

alternately, to inform him of his right to file such a motion pro se did not constitute denial of the Sixth Amendment's guarantee of the right to effective counsel, we affirm the district court's denial of Jackson's application for habeas relief.

## I
## Implicit Wavier of Teague by the State

The retroactivity principle established by the Supreme Court in Teague v. Lane[1] "prevents a federal court from granting habeas relief to a state prisoner based on a rule announced after his conviction and sentence became final."[2]   In this case, Texas implicitly waived a Teague defense to Jackson's habeas petition by failing to raise the issue in the district court.  Nevertheless, for the first time on appeal Texas urges us to apply Teague to Jackson's petition.  We conclude that, absent compelling reasons to the contrary, a federal court should apply Teague even when it has been implicitly waived by the State.

A federal court has the power to consider a Teague defense even when it has not been advanced by the State.[3]  We have been confronted with the issue whether to apply Teague despite the State's failure to argue it at least three times.  On one of those occasions we exercised our discretion to apply Teague "because it

---

[1]     489 U.S. 288 (1989).

[2]     Caspari v. Bohlen, 510 U.S. 383, 389 (1994).

[3]     Id.

**2**

was the primary reason given by the district court for its judgment"[4] and on another we did so "in the interests of finality and judicial economy."[5]  On the one occasion that we declined to exercise our discretion to apply Teague, we did so because, in light of a number of extraordinary circumstances, "it was not possible for [the defendant] to raise [his claim] on direct appeal."[6]  Even though these decisions clearly reaffirm our power to raise Teague sua sponte, they provide little explanation and thus little guidance concerning the circumstances under which the discretionary post-waiver application of Teague is proper.

The retroactivity principle established in Teague was motivated in the first instance by concerns about the evenhanded and uniform application of justice.  Teague held that "new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review."[7]  The Court recognized that because direct and collateral review play markedly different institutional roles within our system of justice, each involves

---

[4]    Wilkerson v. Whitley, 28 F.3d 498, 504 (5th Cir. 1994) (en banc) (Teague defense implicitly waived by State on appeal).

[5]    Fisher v. State of Texas, 169 F.3d 295, 305 (5th Cir. 1999).

[6]    Blankenship v. Johnson, 118 F.3d 312, 317 (5th Cir. 1997).

[7]    489 U.S. at 303 (emphasis added); see also Griffith v. Kentucky, 479 U.S. 314, 322 (1987) ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication").

different fairness and policy concerns.  The Court determined the appropriate retroactivity rule for each type of review "by focusing, in the first instance, on the nature, function, and scope of the adjudicatory process in which [each] arise[s]."[8]  The Court

---

[8]      Id at 306-07.

emphasized above all else the importance of applying the retroactivity rules uniformly and consistently <u>within</u> each class of appeals, so as to avoid an unjust "disparity in the treatment of similarly situated defendants."[9]

The <u>Teague</u> court's conclusion that new constitutional rules should not be applied retroactively on habeas review was grounded in concerns about finality and comity that uniquely arise in the context of collateral attack on a state court's final judgment of conviction.[10] Comity concerns are invoked to prevent federal interference in matters of vital concern to the states; accordingly, rules that are created to foster comity are traditionally made waivable by the states on a case-by-case basis.[11]

---

[9] <u>Id</u> at 303-05 (deploring the "unequal treatment of those who were similarly situated" under the retroactivity rules applied by the Court prior to <u>Teague</u> and noting that the "selective application of new rules violates the principle of treating similarly situated defendants the same.").

[10] "The costs imposed upon the States by a retroactive application of new rules of constitutional law on habeas corpus generally far outweighs the benefits of this application. In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, for it continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards." <u>Id</u> at 310 (quotations, citations and punctuation omitted). Moreover, "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." <u>Id</u> at 309.

[11] <u>See</u>, <u>e.g.</u>, <u>Florida Prepaid Postsecondary Ed. Expense Bd v. College Savings Bank</u>, 527 U.S. 627, __, 119 S.Ct. 2199, 2204 (noting the ability of states to waive Eleventh Amendment immunity).

Concerns about the finality of judgments and the evenhanded application of justice, however, are invoked for the purpose of protecting the philosophical and moral foundations of our entire judicial system.  Every state ought to be concerned with preserving those foundations, but the interests in question are not unique to any particular state and therefore are not properly entrusted to the keeping of the states on a case-by-case basis.

Teague recognized that treating similarly situated defendants differently exacts an unavoidable moral cost on our judicial system.  Teague's goal of achieving the uniform dispensation of justice cannot be achieved, however, unless the courts take it on themselves to apply a single retroactivity standard uniformly. Thus, the Teague nonretroactivity rule is not an affirmative defense in the traditional sense of that term; rather, it is a vehicle for the vindication of a fundamental principle of justice. The Supreme Court acknowledged as much in Caspari when it ruled that federal courts may raise the Teague rule sua sponte.[12]  As Teague was designed to replace a discretionary and consequently inconsistent standard for retroactive application of new constitutional rules on habeas review, its entire purpose would be defeated if its post-waiver application were left entirely to the unfettered discretion of the courts.  An easily administrable standard is required if the evenhanded application of justice is to

---

[12]      510 U.S. at 389.

be ensured.  We conclude therefore that, absent a compelling, competing interest of justice in a particular case, a federal court should apply Teague even though the State has failed to argue it. Fundamental principles of fairness are not the states' to waive.

Finding no compelling, competing interest of justice in the instant case, we subject Jackson's appeal to a Teague analysis sua sponte.

## II
## Teague Analysis

"In determining whether a state prisoner is entitled to habeas relief, a federal court should apply Teague by proceeding in three steps."[13]

> First, we must determine when [Jackson's] conviction and sentence became final for Teague purposes.  Second, we must survey the legal landscape as it then existed and determine whether a state court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution.  Third, if we determine that [Jackson] seeks the benefit of a new rule, we must consider whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle.[14]

Jackson did not file a petition for discretionary review with the Texas Court of Criminal Appeals or a timely motion for rehearing with the Texas Court of Appeal.  Jackson's conviction

---

[13]    Id at 390.

[14]    Fisher, 169 F.3d at 305 (citing Caspari, 510 U.S. at 390).

**7**

therefore became final in May of 1996, after the times for filing those pleadings elapsed.

"Unless reasonable jurists hearing petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor, we are barred from doing so now."[15]  It is clear that the precedent existing in 1996 did not dictate a ruling in Jackson's favor.  Jackson asks us to hold that assistance provided by a criminal defendant's attorney is ineffective per se when he fails either to file timely a motion for rehearing or to inform the defendant of his right to file such a motion pro se.  Jackson cites no authority in support of this proposition, but instead asks us to extend to the very different context of a motion for rehearing, the well-established rule that a criminal defendant has a right to representation on his first appeal of right.[16]

At first blush a motion for rehearing appears to be quite similar to a petition for discretionary appeal, and it was well settled at the time that Jackson's conviction became final that a criminal defendant has no Sixth Amendment right to representation on a discretionary appeal.[17]  Thus, although Jackson does make a colorable argument that his opportunity to file a motion for

---

[15]    Id (citing Graham v. Collins, 506 U.S. 461, 467 (1993).

[16]    Evitts v. Lucey, 469 U.S. 387, 393-94 (1985).

[17]    Ross v. Moffitt, 417 U.S. 600 (1974).

rehearing should be considered the last step in his first appeal of right, a holding to that effect would surely create a new rule of constitutional law. Thus, unless Jackson's petition for a writ of habeas corpus meets one of the narrow exceptions to the <u>Teague</u> rule, we are barred by <u>Teague</u> from considering his claim.

"<u>Teague</u> provides that a new constitutional rule can apply retroactively on federal collateral review only if the new rule (1) puts certain kinds of primary, private conduct beyond the power of the criminal law-making authority to proscribe or (2) is a rule of procedure that is implicit in the concept of ordered liberty."[18] The second <u>Teague</u> exception "is reserved for watershed rules of criminal procedure that implicate the fundamental fairness and accuracy of the proceeding."[19] The new constitutional rule Jackson asks us to recognize obviously fails to qualify for either of these exceptions. Nevertheless, we conclude that a third narrow exception to <u>Teague</u>, heretofore unrecognized by the courts, justifies our deeper consideration of Jackson's claim.

When an alleged constitutional right is susceptible of vindication <u>only</u> on habeas review, application of <u>Teague</u> to bar full consideration of the claim would effectively foreclose any opportunity for the right ever to be recognized. Jackson's petition asserts just such a right: A state criminal defendant

---

[18]  <u>Fisher</u>, 169 F.3d at 306 (quotations omitted).

[19]  <u>Id</u> (citation omitted).

could never raise a claim on direct appeal that he had been denied effective assistance of counsel by his appellate attorney's failure to file a timely motion for rehearing.  If a criminal defendant were to raise such a claim on direct appeal from the judgment of an intermediate court of appeals, the only relief to which he could possibly be entitled would be reconsideration of that court's decision.  But by agreeing to hear the defendant's direct appeal, a higher court would already have granted the defendant precisely that relief.  Thus, the very act of the higher court in accepting the defendant's direct would render the defendant's ineffective assistance of counsel claim moot, foreclosing any opportunity for the defendant's Sixth Amendment right to counsel ever to be passed upon.[20]

Because the constitutional question presented by Jackson could be raised only on collateral review, we are obliged to give serious consideration to the merits of Jackson's claim.  We now proceed to do so.

### III
### The Right to Counsel on a Motion for Rehearing

Jackson asks us to hold that he received ineffective assistance of counsel on direct appeal because his attorney failed

---

[20]    See Brown v. Liberty Loan Corp. of Duval, 539 F.2d 1355, 1358 (5th Cir. 1976) ("An actual case or controversy must exist, of course, when a suit is instituted and at all stages of appellate review in order to avoid mootness."); Dresser Industries, Inc. v. United States, 596 F.2d 1231 (5th Cir. 1979) (case becomes moot on appeal once appellant has received all of the relief requested).

(1) to file a motion for rehearing or, alternately, (2) to inform Jackson of his right to file such motion pro se. Jackson cannot have received constitutionally deficient counsel on his motion for rehearing, however, if he had no constitutional right to counsel for purposes of filing a rehearing motion.[21] "A criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals."[22] When a state grants a criminal defendant an appeal of right, the Constitution requires only that the defendant's claims be "once... presented by a lawyer and passed upon by an appellate court."[23] Not only does a motion for rehearing come after the appellate court has passed on the claims; there can be no question that the granting of a motion for rehearing lies entirely within the discretion of a court of appeals. Rehearing at that point is by no means an appeal of right.

We conclude that a criminal defendant has no constitutional right to counsel on matters related to filing a motion for rehearing following the disposition of his case on direct appeal. We therefore affirm the district court's denial of Jackson's application for a writ of habeas corpus.

AFFIRMED

---

[21]    See Wainright v. Torna, 455 U.S. 586, 587-88 (per curiam) (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely.").

[22]    Id at 587 (citing Ross v. Moffitt, 417 U.S. 600 (1974).

[23]    Ross, 417 U.S. at 614.