**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-40061

JAMES LEE CLARK,

Petitioner - Appellant,

VERSUS

GARY JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division,

Respondent - Appellee.

Appeal from the United States District Court
For the Eastern District of Texas, Beaumont Division

September 12, 2000

Before DAVIS, EMILIO M. GARZA, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Texas death row inmate James Lee Clark requests that we grant a certificate of appealability as required by 28 U.S.C. § 2253(c) before an appeal may be taken from the district court's denial of habeas relief. We deny Clark's request.

I. FACTS and PROCEDURAL BACKGROUND

1

In the early morning of June 7, 1993, James Lee Clark and James Brown arrived at a Texaco store in Denton, Texas, and asked the store clerk to call an ambulance for Brown who had suffered a gunshot wound. Subsequent investigation revealed that Brown accidentally shot himself in the leg at point blank range with a shotgun while he and Clark were assaulting Shari Catherine "Cari" Crews (16 years old) and Jesus Garza (17 years old) at Clear Creek. Police recovered both bodies from the creek and determined that Crews had been sexually assaulted by Clark, as verified by DNA evidence, and then killed with a single shotgun wound (a contact wound) to the back of the head. Garza also died from a single shotgun wound, but it was to the left side of his chin or jaw. Powder residue revealed a short muzzle-to-wound distance, but it was not a contact wound. Police also recovered a 12 gauge double barrel shotgun and a .22 caliber rifle from the crime scene.

Further investigation revealed that Clark and Brown, both parolees, stole the shotgun and rifle in car burglaries on June 4, 1993. The stock of the rifle had been shortened and police found the sawed off portion while searching Clark's residence; the stock of the shotgun was cracked. The search of Clark's residence also produced tennis shoes splattered with the blood of Brown, Crews, and Garza. During interrogation, Clark stated that Brown instigated the incident; shot himself while using the shotgun as a bludgeon to strike Garza in the head; and, after suffering the severe gunshot wound to the leg, shot and killed both victims.

2

Brown contended that Clark killed both victims.

Clark was indicted on the charge of capital murder arising out of the June 7, 1993, robbery, sexual assault, and death of Crews. Clark was convicted of the capital murder on April 29, 1994, and he was sentenced to death on May 3, 1994. The conviction and sentence were affirmed by the Texas Court of Criminal Appeals on October 2, 1996. On October 15, 1996, Clark's trial attorneys informed him that they would no longer represent him, and on the following day Clark filed a pro se motion for appointment of counsel to pursue state habeas relief. Clark also filed a pro se motion on October 18, 1996, for an extension of time to file a motion for rehearing by the Court of Criminal Appeals. Although this motion was granted and the time extended until November 11, 1996, no motion for rehearing was filed.

The Court of Criminal Appeals appointed counsel for Clark to pursue collateral proceedings on April 9, 1997. Clark subsequently applied for a writ of habeas corpus in the trial court on October 6, 1997, challenging the validity of his conviction and sentence by asserting eleven grounds for relief. Without holding an evidentiary hearing, the trial court entered findings of fact and conclusions of law. The Court of Criminal Appeals reviewed the record, adopted the trial court's findings and conclusions (with the exception of finding of fact number ten, which it found unsupported by the record), and denied habeas relief on July 8, 1998.

On July 27, 1998, Clark filed a petition for habeas relief in the federal district court asserting five grounds for relief: (1) the prosecutor suppressed exculpatory information; (2) the petitioner received a disproportionate sentence given his role in the crime; (3) the trial court's failure to instruct the jury on the unavailability of parole during the initial thirty-five years of a life sentence violated due process of law; (4) the petitioner was denied effective assistance of counsel during direct appeal; and (5) the petitioner was denied effective assistance of counsel when his appointed counsel failed to present available evidence during the punishment stage. Without allowing for discovery or holding an evidentiary hearing, and after conducting a de novo review of the magistrate's report and overruling Clark's objections thereto, on December 13, 1999, the district court adopted the magistrate's conclusions of law and findings of fact, and denied the petition for habeas corpus.

On January 12, 2000, Clark timely filed a notice of appeal and simultaneously applied to the district court for a certificate of appealability (COA) as required by 28 U.S.C. § 2553(c) to obtain review in this court of the denial of federal habeas relief. Clark's application urged the same five arguments that were rejected by the district court, and it also sought to appeal the district court's refusal to permit discovery or to conduct an evidentiary hearing regarding the first five claims for relief. The district court denied COA as to all six claims on January 28,

4

2000.

## II. DISCUSSION

Clark seeks a COA from this court on five constitutional issues: (1) the prosecution's violation of Clark's right to due process of law by its failure to disclose to Clark's trial counsel favorable, material evidence as required by Brady v. Maryland, 373 U.S. 83 (1963); (2) the violation of Clark's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment resulting from the prosecution's inconsistent argument in a subsequent related trial as to the identity of the shooter and the state trial court's jury instructions, which permitted a capital murder conviction and a sentence of death without a finding that Clark was the actual killer, had attempted to kill, or had intended that a human life be taken; (3) the violation of Clark's due process rights resulting from the trial court's failure to instruct the jury that Clark would be ineligible for parole for thirty-five years if sentenced to life imprisonment; (4) the denial of effective assistance as guaranteed by the Sixth and Fourteenth Amendments at a critical stage during Clark's direct appeal that precluded him from seeking a rehearing in the Court of Criminal Appeals and a petition for writ of certiorari to the United States Supreme Court; and (5) the denial of effective assistance of counsel at the punishment stage of the capital murder trial during which Clark's counsel presented no favorable evidence despite its availability, in violation of the Sixth and Fourteenth Amendments.

Clark additionally challenges the federal district court's refusal to permit discovery or to hold an evidentiary hearing to determine the validity of Clark's claim of a <u>Brady</u> violation and of ineffective assistance of counsel at the punishment stage.

This case is governed by the AEDPA because Clark's petition for federal habeas relief was filed on July 27, 1998, after the AEDPA effective date of April 24, 1996. <u>See</u> <u>Green v. Johnson</u>, 116 F.3d 1115, 1119-20 (5th Cir. 1997). As Clark seeks to appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court," he must first obtain a COA. 28 U.S.C. § 2253(c)(1)(A). A COA may issue only if Clark "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Such a showing requires the applicant to demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." <u>Hill v. Johnson</u>, 210 F.3d 481, 484 (5th Cir. 2000) (citing and quoting <u>Drinkard v. Johnson</u>, 97 F.3d 751, 755 (5th Cir. 1996), <u>overruled in part on other grounds by</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997) and <u>Williams v. Taylor</u>, 120 S.Ct. 1495 (2000)) (internal quotation marks and additional citations omitted). Where, as here, the district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

6

claims debatable or wrong. See Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir. 2000)(citing Slack v. McDaniel, 120 S.Ct. 1595, 1603-04 (2000)). "We resolve doubts about whether to grant a COA in [a petitioner's] favor, and we may consider the severity of his penalty in determining whether he has met his 'substantial showing' burden." Hill, 210 F.3d at 484 (citing Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir. 1997), cert. denied, 522 U.S. 963 (1997)).

a) Brady due process violation claim.

In Brady v. Maryland, the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to the defendant's guilt or punishment. 373 U.S. at 87. The Supreme Court has found evidence material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of trial.'" Kyle v. Whitley, 514 U.S. 419, 434 (1995)(citing Bagley, 473 U.S. at 678).

Clark maintains that during his capital murder trial the state prosecutor argued that Clark had shot Cari Crews and Jesus Garza,

7

whereas at the subsequent trial of Clark's co-defendant, James Brown, the prosecutor argued that Brown was the lone triggerman in the murders. Allegedly, the prosecutor's arguments at the Clark trial were based upon the testimony of Dr. John Kristofferson, Brown's orthopedic surgeon, who opined that Brown, due to the seriousness of a gunshot wound accidentally inflicted prior to the murders, was not likely able to walk or stand at the time Crews and Garza were killed. This testimony, in conjunction with the expert testimony from the autopsy physician, Dr. Marc Krouse, as to the muzzle-to-wound distance and entry wound location regarding Garza indicating that the shotgun was fired while being held parallel to the front of Garza's torso, allowed the prosecutor to argue that Clark was the triggerman since Brown was injured too severely to load the shotgun and because "it wasn't just somebody laying on the ground, aiming a shotgun at somebody and shooting them."[1]

Later, at Brown's trial, the prosecution argued that Brown was the triggerman in both murders. This argument was again based in part upon expert testimony given by the autopsy physician, Dr. Marc Krouse, concerning the muzzle-to-wound distance with respect to Jesus Garza. Clark argues that in Brown's trial Dr. Krouse's opinion of the muzzle-to-wound distance was "manicured" or revised to "just a few inches" instead of "a couple of feet" as he had

---

[1]Because the murder weapon was a double barrel shotgun and because Brown was accidentally shot in the leg prior to the murders before Crews and Garza were killed, someone must have unloaded the spent cartridge and reloaded the shotgun.

testified in Clark's trial. Clark argues that the difference between the versions of Dr. Krouse's expert opinions was material and favorable to his defense, but was not available to his trial counsel for use at his trial. According to Clark, had this evidence been available to him, he too could have advanced the same argument in his trial that the prosecution advanced subsequently in Brown's trial:

> Whoever shot Garza right here in the left side of the jaw, whoever shot him had that gun three or four inches below his chin. This gun is some 24 inches long. You heard testimony to that. Where does that put the trigger? That's the kind of awkward position for someone facing Jesus [Garza] to pull the trigger and shoot him here. What is that consistent with? What this wound and this shotgun are consistent with is that the shooter is sitting. And either Jesus was standing over him posing a threat, or Jesus was as Brown said, lying unconscious on the ground, and the shooter sitting on the ground shot him there. That's what the physical evidence tells you.

The district court rejected Clark's argument, concluding that (1) Dr. Krouse's testimony in both trials was essentially consistent, i.e., in both cases he in effect testified that Garza was killed by a shot fired a short distance from his head ("a couple of feet" in Clark's trial and "just a few inches" in Brown's trial) and therefore did not suggest a suppression of evidence; and

9

(2) that, assuming Dr. Krouse's testimony was significantly inconsistent with respect to Garza's fatal wound, that inconsistency would not have tended to exculpate Clark from the crime of which he was convicted – the capital murder of Cari Crews.

We cannot say that the district court erred in either finding. We find that Clark has failed to state a <u>Brady</u> claim as he has failed to show suppression and materiality. Clark has presented no proof of suppression. "[C]losing arguments are not evidence. Moreover, a prosecutor can make inconsistent arguments at the separate trials of codefendants without violating the due process clause." <u>Beathard v. Johnson</u>, 177 F.3d 340, 348 (5th Cir. 1999). There is also no proof that the prosecution suppressed any evidence regarding Dr. Krouse's testimony because the testimony was not markedly different in the two trials. Moreover, Clark fails to demonstrate materiality because as the prosecutor's argument in Brown's case indicates, a muzzle-to-wound distance regarding Garza of "just a few inches" does not make it any more likely that Garza was killed by a shot from a sitting rather than a standing position. Accordingly, Clark has failed to make a substantial showing of the denial of a constitutional right with respect to his claim of a <u>Brady</u> violation.

b) <u>Enmund</u> and <u>Tison</u> claim.

Clark argues that a violation of his Eighth and Fourteenth Amendment rights resulted from the prosecution's inconsistent arguments regarding the identity of the actual shooter in

10

combination with the trial court's instructions permitting a conviction and death sentence without the jury finding that Clark actually killed, attempted to kill, or intended that a human life be taken, in violation of Enmund v. Florida, 458 U.S. 782 (1982), and Tison v. Arizona, 481 U.S. 137 (1987).

Enmund v. Florida held that the death penalty may not be imposed on one who "aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 797. Sentenced to death, Enmund had driven the "getaway" car for two others who had robbed and killed an elderly couple. Focusing on Enmund's individualized culpability, the Court found that he did not kill, attempt to kill, or intend to kill; thus, the imposition of the death penalty was impermissible under the Eighth Amendment. Id. at 798. Tison v. Arizona subsequently limited Enmund by holding that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement." 481 U.S. at 158.

Clark contends that two different instructions violated Enmund and Tison. First, he argues that the use of Texas Penal Code §7.02(b),[2] governing liability of co-conspirators, at the

---

[2]Texas Penal Code §7.02(b) provides: "If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if

11

guilt/innocence phase violates <u>Enmund</u> and <u>Tison</u> because it does not require the co-conspirator to have the intent to commit murder. However, <u>Enmund</u> and <u>Tison</u> apply to the sentencing phase of the trial and not to the guilt/innocence phase. <u>See</u> <u>Enmund</u>, 458 U.S. at 801, and <u>Tison</u>, 481 U.S. at 157. <u>See</u> <u>also</u> <u>Walton v. Arizona</u>, 497 U.S. 639, 649 (1990)("Enmund only places 'a substantive limitation on sentencing, and like other such limits it need not be enforced by the jury.'"); <u>Cabana v. Bullock</u>, 474 U.S. 376, 385 (1986)("Rather, as the Fifth Circuit itself has recognized, Enmund 'does not affect the state's definition of any substantive offense, even a capital offense.'")(citing <u>Reddix v. Thigpen</u>, 728 F.2d 705, 709 (5th Cir. 1984)); and <u>Cantu v. State</u>, 939 S.W.2d 627, 645 (Tex. Crim. 1997)("Both Tison and Enmund were concerned with the implementation of the death penalty on defendants who were not proven to have an intent to kill."). Therefore, Clark's argument based on <u>Enmund</u> and <u>Tison</u> with respect to this instruction is without merit.

Secondly, Clark contends that Special Issue Number Two, given during the sentencing phase, dispensed with the requirement of finding specific intent by allowing the jury to sentence Clark to death on the basis that he "anticipated" a human life would be

---

the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

12

taken. Relying on Texas Criminal Procedure Article 37.071, the state court gave the following instruction:

> Do you find from the evidence beyond a reasonable doubt that the defendant, James Lee Clark, actually caused the death of Shari Catherine Crews, the deceased, on the occasion in question, or if he did not actually cause the decedent's death, that he intended to kill the deceased or another, or that he anticipated that a human life would be taken?
>
> You are instructed that in answering this issue only the conduct of the defendant can be considered, and that the instruction pertaining to the law of parties heretofore given you cannot now be considered in answering this issue.

The jury unanimously answered yes, and subsequently, Clark was sentenced to death. In an unpublished decision affirming the conviction and sentence, the Texas Court of Criminal Appeals stated, "The principle is well-established that when a jury returns a general verdict and the evidence is sufficient to support a finding of guilt under any of the allegations submitted, the verdict will be upheld." Looking at the evidence, the court

13

determined that it was sufficient to support the theory that Clark murdered Crews during the course of committing a sexual assault.[3]

Clark's jury rendered a general verdict. As such, we cannot be confident that the jury did not convict Clark based on his liability as a co-conspirator in the sexual assault or robbery of the victim. "But the conclusion that the jury may not have found that the defendant killed, attempted to kill, or intended a killing take place or that lethal force be employed does not end the inquiry into whether Enmund bars the death sentence; rather it is only the first step." Bullock, 474 U.S. at 384. Reversing the Fifth Circuit, the Supreme Court specifically rejected the argument that a jury alone must make the Enmund determination. See id. "Rather, the [federal habeas] court must examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite

---

[3]In a habeas proceeding with no evidentiary hearing, the state court denied Clark's petition for relief on this issue by summarily relying on Lawton v. State, 913 S.W.2d 542 (Tex. Crim. App. 1996). The court stated, "[T]hat the jury may have found that appellant only anticipated that death would result under Article 37.071 is inconsequential to Enmund and Tison concerns; the jury had already found that appellant intended to at least promote or assist in the commission of an intentional murder." 913 S.W.2d at 555. However, Lawton is inapplicable because its holding concerned felony murder. Furthermore, the dicta which the state court cites is also inapplicable because it quotes Texas Penal Statute 7.02(a)(2) ("A person is criminally responsible for an offense committed by the conduct of another if:...(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense..."), not section 7.02(b), which is in dispute.

14

factual finding as to the defendant's culpability has been made. If it has, the finding must be presumed correct." Id. at 387-88. The necessary finding of intent under Enmund may be made by a trial court or an appellate court. Id. at 389.

The findings of the Texas Court of Criminal Appeals are constitutionally sufficient under Enmund and Tison. Pursuant to Clark's argument that there was insufficient evidence to support a conviction of capital murder, the court found that "a rational trier of fact could have found the essential elements of murder in the course of aggravated sexual assault." The court pointed to the DNA evidence linking Clark to the sexual assault and blood spatter evidence linking Clark to the murder and then concluded that the evidence was sufficient to prove murder during a sexual assault. On a related issue of future dangerousness, the court further found that Clark assaulted and executed Crews. ("They [Clark and Brown] made the girl strip and apparently tied her hands with her own bra and then appellant [Clark] brutally sexually assaulted her--both vaginally and anally. Appellant then put the shotgun to her head and executed her.") These findings show specific intent under Enmund or at the very least, major participation in the felony committed with reckless indifference to human life under Tison. 458 U.S. at 797; 481 U.S. at 158. Thus, under the principles of Bullock, there has been a "determination from [Texas'] own courts of the factual question whether [Clark] killed, attempted to kill,

15

intended to kill, or intended that the lethal force would be used." 474 U.S. at 392. See also Stewart v. Collins, 978 F.2d 199 (5th Cir. 1992)(upholding a capital murder conviction and sentence on the basis of the jury verdict and answers to the special issues along with findings of the Court of Criminal Appeals). Clark has not made a substantial showing of a denial of a constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments, and no COA will issue.

c) Jury instruction due process violation claim.

Clark argues that the trial court's failure to instruct the jury that he would not be eligible for parole for thirty-five years if sentenced to life imprisonment violated Simmons v. South Carolina, 512 U.S. 154 (1994). However, Clark's claim is barred under the non-retroactivity limitation in Teague v. Lane, 489 U.S. 233 (1989). As a threshold matter, a state prisoner must demonstrate that the rule of which he seeks benefit is not "new." O'Dell v. Netherland, 521 U.S. 151, 156 (1997). A rule is new if it "breaks new ground," "imposes a new obligation on the States or the Federal Government," or was not "dictated by precedent existing at the time the defendant's conviction became final." Graham v. Collins, 506 U.S. 461, 467 (1993)(citing Teague, 489 U.S. at 301).

Clark urges us to adopt a rule that would allow him to present evidence concerning his thirty-five year ineligibility for parole. This rule is certainly new as Simmons was based on lifetime parole

16

ineligibility. 512 U.S. at 169. See also Ramdass v. Angelone, 120 S.Ct. 2113, 2121 (2000)("Simmons applies only to instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison."). Because this new rule fails to meet the narrow exceptions of Teague, namely rules forbidding punishment of certain primary conduct or watershed rules of criminal procedure, it may not be applied retroactively to Clark's trial. See also Allridge v. Scott, 41 F.3d 213, 222 n.11 (5th Cir. 1994)("Specifically, if we were to conclude...that due process entitles a capital defendant to introduce evidence of parole ineligibility whenever the state argues the defendant is a future danger, regardless of whether the state statutorily provides for parole ineligibility, such a conclusion certainly would constitute a 'new rule' and therefore would be barred under Teague."). Accordingly, Clark has failed to make a substantial showing of the denial of constitutional right of due process on this claim, and no COA will issue.

d) Ineffective assistance of counsel claims.

To prevail on an ineffective assistance of counsel claim, Clark must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. See Strickland v. Washington, 466 U.S. 668 (1984). Counsel's performance is deficient when the representation falls below an objective standard of reasonableness. See id. and Davis v. Johnson, 158 F.3d 806, 812

17

(5th Cir. 1998).  In assessing counsel's performance, we must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct falls within the wide range of objectively reasonable conduct.  See id.

To establish that the counsel's deficiency prejudiced his defense, Clark "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

1. Ineffective assistance of counsel on direct appeal.[4]

Clark argues that he was denied his right to counsel in preparing a motion for rehearing to the Court of Criminal Appeals and a writ of certiorari to the United States Supreme Court.[5]  This

---

[4]This Circuit's decision in Jackson v. Johnson, 217 F.3d 360 (5th Cir. 2000), forecloses the retroactivity issue presented by Teague v Lane, which prevented granting habeas relief based on a rule announced after a defendant's conviction.  The Fifth Circuit found that a claim of ineffective assistance of counsel based on a failure to file for rehearing was a narrow exception to Teague. 217 F.3d at 364.

[5]Because there is no constitutional right to counsel for discretionary appeals, we need not analyze this claim under Strickland.

argument is unsupported as the Supreme Court has not extended the right of counsel to discretionary review. Due process does require the appointment of effective counsel for a criminal appellant pursuing a first appeal of right. Evitts v. Lucey, 469 U.S. 387, 392 (1985). However, Ross v. Moffitt, 417 U.S. 600, 610 (1974), held that it was constitutional under due process to not provide counsel on discretionary appeal.[6] The Texas Constitution provides, "The appeal of all cases in which the death penalty has been assessed shall be to the Court of Criminal Appeals." Tex. Const. Code Ann. Art. 5, § 5 (West 2000). Therefore, the right of appeal is to the Court of Criminal Appeals, and not for a petition for rehearing to that court or a petition to the United States Supreme Court. See Ayala v. State, 633 S.W.2d 526, 528 (Tex. Crim. App. 1982)(holding that "[i]ndigent appellants are not deprived of the effective assistance of counsel if appointed counsel fail to file a petition for discretionary review of a court of appeals' decision.")(citing Wainwright v. Torna, 455 U.S. 586 (1982)). The Supreme Court itself has defined its review as discretionary and found the argument that a state should provide counsel to one

---

[6]"The defendant needs an attorney on appeal not as a shield to protect him against being 'haled into court' by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt." 417 U.S. at 610-11. However, in Blankenship v. Johnson, 118 F.3d 312, 317 (5th Cir. 1997), the Fifth Circuit found a right to counsel on state-requested discretionary review.

petitioning the Court to be "unsupported by either reason or authority." <u>Ross v. Moffitt</u>, 417 U.S. at 616-17. Furthermore, the Fifth Circuit has pointedly stated, "[T]here can be no question that the granting of a motion for rehearing lies entirely within the discretion of a court of appeals. Rehearing at that point is by no means an appeal of right." <u>Jackson</u>, 217 F.3d at 365. Also, a Texas court has held that because there is no right to counsel for a discretionary review, the appellate counsel has no duty to even advise the appellant about the merits of the review. <u>Ex parte Wilson</u>, 956 S.W.2d 25, 27 (Tex. Crim. App. 1997). Accordingly, Clark has failed to make a substantial showing of the denial of a constitutional right on this claim as there is no constitutional right, and no COA will issue.

2. Ineffective assistance of counsel at punishment phase of trial.

Clark argues that he was denied effective assistance of counsel at the punishment phase of his trial when appointed counsel failed to present any available evidence at the punishment phase. The defendant bears the burden of showing by a preponderance of evidence that he was deprived of the right of effective counsel. <u>Martin v. Maggio</u>, 711 F.2d 1273, 1279 (5th Cir. 1983). "Failure to meet either the deficient performance prong or the prejudice prong will defeat a claim for ineffective assistance of counsel." <u>United States v. Stewart</u>, 207 F.3d 750 (5th Cir. 2000).

Clark fails to meet his burden of proof for both prongs of the

test.  First he fails to show deficient performance.  Clark argues that it was an unsound trial strategy to not call subpoenaed witnesses, but he does not explain who was subpoenaed and the importance of their testimony.  The record only indicates that Clark had an extensive criminal record; thus, it appears counsel made a "strategy choice...well within the range of professionally reasonable judgments."  Strickland, 466 U.S. at 699.  See Jones v. Thigpen, 788 F.2d 1101 (5th Cir. 1986)(finding failure to present mitigating factors of youth and mental retardation was deficient performance).  Furthermore, Clark himself testified that he made the decision not to call any witnesses after talking with his attorneys the day before.  "'[M]eaningful discussion with one's client' is one of the 'cornerstones of effective assistance of counsel.'"  Martin, 711 F.2d at 1280 (citing Gaines v. Hopper, 575 F.2d 1147, 1149-50 (5th Cir. 1978)).  Secondly, Clark attempts to argue that a failure to put on evidence constitutes a constructive denial of counsel and thus prejudice is presumed.  However, there is a "strong presumption of reliability" attached to judicial proceedings.  Roe v. Flores-Ortega, 120 S. Ct. 1029, 1037 (2000).  Unlike in Flores-Ortega, where counsel neglected to file a notice of appeal, Clark's counsel subpoenaed witnesses in preparation, but ultimately allowed Clark to decide whether to present them.  These actions do not constitute a denial of counsel, actual or constructive.  Even if we assume Clark's counsel's performance was

21

defective, Clark has failed "to show the existence of evidence of sufficient quality and force to raise a reasonable probability that, had it been presented to the jury, a life sentence would have resulted." Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992). Accordingly, Clark has failed to make a substantial showing of the denial of a constitutional right on this claim, and no COA will issue.

e) Evidentiary hearing claim.

AEDPA governs requests for evidentiary hearing under 28 U.S.C. § 2254(e)(2).[7] After that standard is met, the district court's denial is reviewed for abuse of discretion. Murphy v. Johnson, 205 F.3d 809, 815 (5th Cir. 2000). Assuming Clark meets the AEDPA standard because he was denied a hearing in state court, see id. at 815, nevertheless, the district court did not abuse its discretion in failing to grant a hearing. Our resolution of the issues demonstrates that Clark has failed to show a significant factual

---

[7]"If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
(A) the claim relies on
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

22

dispute on his <u>Brady</u> claim that could be addressed by a hearing, and failed to show how his claim of ineffective assistance of counsel would be advanced by a hearing.  No COA will issue on the refusal of the district court to hold an evidentiary hearing.

<h3 style="text-align:center">III. CONCLUSION</h3>

For the foregoing reasons, we deny Clark's request for a COA on all issues.

Application DENIED.