United States Court of Appeals
Fifth Circuit

**F I L E D**

October 2, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 05-70016

**KENNETH EUGENE FOSTER,**

Petitioner-Appellee-Cross-Appellant,

versus

**NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,**

Respondent-Appellant-Cross-Appellee.

**Appeals from the United States District Court
for the Western District of Texas**

Before JONES, Chief Judge, and BARKSDALE and PRADO, Circuit Judges.

RHESA HAWKINS BARKSDALE:

Kenneth Eugene Foster was convicted in Texas state court of capital murder during the course of a robbery in 1996 and sentenced to death. The district court granted conditional habeas relief on Foster's claimed unconstitutional sentence under the Eighth Amendment, as construed in *Enmund v. Florida*, 458 U.S. 782, 797-800 (1982), and *Tison v. Arizona*, 481 U.S. 137 (1987), because the jury did not make the requisite factual findings: (1)whether Foster acted with reckless indifference to human life; and (2) whether he played a major role in the activities leading to the murder. For Foster's remaining 11 claims, the court denied relief and a certificate of appealability (COA). *See* 28 U.S.C. §§ 2253, 2254.

The State appeals the conditional habeas-relief.  Subsequent to our recent denial of Foster's COA request, *Foster v. Dretke*, No. 05-70016, 2006 WL 616980 (5th Cir. 13 Mar. 2006), *petition for cert. filed*, (U.S. 7 June 2006) (No. 05-11488), Foster requested another COA to pursue a stand-alone actual-innocence claim.  In so doing, he maintained a COA request for that claim had been inadvertently omitted from his initial COA request.  Oral argument addressed the State's appeal and the extremely belated COA request.

**COA DENIED; conditional habeas relief granted by the district court VACATED; habeas relief DENIED.**

I.

On the evening of 14 August 1996, Foster and three others – Mauriceo Brown, DeWayne Dillard, and Julius Steen – embarked on armed robberies around San Antonio, Texas, beginning with Brown's announcing he had a gun and asking whether the others wanted to rob people:  "I have the strap, do you all want to jack?".  During the guilt/innocence phase of Foster's trial, Steen testified he rode in the front seat, looking for potential victims, while Foster drove.

Steen and Brown testified to robbing two different groups at gunpoint that night; the four men divided the stolen property equally.  The criminal conduct continued into the early hours of the next day (15 August), when Foster began following a vehicle driven by Mary Patrick.

2

Patrick testified: she and Michael LaHood, Jr. were returning in separate cars to his house; she arrived and noticed Foster's vehicle turn around and stop in front of Michael LaHood's house; Patrick approached Foster's vehicle to ascertain who was following her; she briefly spoke to the men in the vehicle, then walked away towards Michael LaHood, who had reached the house and exited his vehicle; she saw a man with a scarf across his face and a gun in his hand exit Foster's vehicle and approach her and Michael LaHood; Michael LaHood told her to go inside the house, and she ran towards the door, but tripped and fell; she looked back and saw the gunman pointing a gun at Michael LaHood's face, demanding his keys, money, and wallet; Michael LaHood responded that Patrick had the keys; and Patrick heard a loud bang.

Michael LaHood died from a gunshot wound to the head. The barrel of the gun was no more than six inches from his head when he was shot; it was likely closer than that. Brown had similarly stuck his gun in the faces of some of the night's earlier robbery victims.

Later that day, all four men were arrested; *each* gave a written statement identifying Brown as the shooter. Brown admitted being the shooter but denied intent to kill. He testified that he approached Michael LaHood to obtain Patrick's telephone number and only drew his weapon when he saw what appeared to be a gun in

3

Michael LaHood's possession and heard what sounded to him like the click of an automatic weapon.

In May 1997, Foster and Brown were tried jointly for capital murder committed in the course of a robbery. The jury found each guilty of that charge and answered the special issues at the penalty phase to impose a death sentence for each.

On direct appeal, Foster contended, *inter alia*: because he did nothing more than agree to commit and participate in robberies, his death sentence violated the Eighth Amendment; application of Texas Penal Code § 7.02(b) (conspiracy party liability) violated the Sixth and Fourteenth Amendments to the Constitution; and the trial court erred in refusing a jury instruction on the lesser-included offense of aggravated robbery. The Texas Court of Criminal Appeals affirmed Foster's conviction and sentence.

The court held, *inter alia*: Foster's sentence did *not* violate the Constitution because, before convicting him of capital murder as a party, the jury had to determine he intended to promote the commission of intentional murder; a law-of-the-parties instruction under § 7.02(b) is appropriate when no such charge is in the indictment because the statute describes *attempt* to carry out, *not* the offense of, conspiracy; and a lesser-included-offense instruction was *not* warranted because nothing in the record would permit a rational jury to find Foster guilty only of aggravated robbery and not murder in the course of a robbery. *See **Foster v.**

4

*State*, No. 72,853 (Tex. Crim. App. 30 June 1999) (unpublished) (*TCCA Opn.*). Three judges dissented, and would have held, *inter alia*, that Foster was entitled to a lesser-included-offense instruction. *Id*. at 33 (Mansfield, J., dissenting).

The Supreme Court of the United States denied a writ of *certiorari*. *Foster v. Texas*, 529 U.S. 1057 (2000).

In April 1999, before the conclusion of his direct appeal, Foster filed for state-habeas relief. After holding evidentiary hearings, the state-habeas court issued findings of fact and conclusions of law, recommending denial of relief; the Court of Criminal Appeals denied relief in an unpublished order. *Ex Parte Foster*, No. 50,823-01 (Tex. Crim. App. 6 Mar. 2002).

The Supreme Court again denied a writ of *certiorari*. *Foster v. Texas*, 537 U.S. 901 (2002).

Foster presented 14 claims in his federal-habeas petition, including the actual-innocence claim for which he belatedly seeks a COA from this court. Included with the petition were new affidavits and other supporting evidence, and an evidentiary hearing was requested. The State moved for summary judgment. On 3 March 2005, the district court granted conditional habeas relief as to sentencing for three claims and denied relief, as well as a COA, for the remaining 11. Among other rulings, the requested evidentiary hearing was denied and the State's summary-judgment

5

motion was denied as moot.  *See* ***Foster v. Dretke***, No. SA-02-CA-301-RF, 2005 U.S. Dist. LEXIS 13862 (S.D. Tex. 3 Mar. 2005).

Each side appealed.  To do so, Foster requested a COA from our court on two claims.  ***Foster***, 2006 WL 616980, addresses the denial of that request.

II.

Review of this 28 U.S.C. § 2254 habeas proceeding is subject to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA).  *See*, *e.g.*, ***Penry v. Johnson***, 532 U.S. 782, 792 (2001).  Before addressing the conditional habeas relief granted by the district court, we consider the belated COA request for a stand-alone actual-innocence claim.

A.

Under AEDPA, Foster may not appeal the denial of habeas relief unless he obtains a COA from either the district, or this, court. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b)(1); ***Slack v. McDaniel***, 529 U.S. 473, 478 (2000).  Under Federal Rule of Appellate Procedure 22(b)(1), the district court must first decide whether to grant a COA before one can be requested here.  As noted, the district court denied a COA for the claim Foster seeks to appeal here.

Obtaining a COA requires "a substantial showing of the denial of a constitutional right".  28 U.S.C. § 2253(c)(2); *e.g.*,

6

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack*, 529 U.S. at 483. For that requisite showing, an applicant usually must demonstrate "reasonable jurists could debate whether (or, for that matter, agree that) the [federal-habeas] petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'". *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). Where, as here, the district court's habeas denial includes a procedural ruling, as opposed to one on the underlying constitutional claim, the showing is expanded. *See Hall v. Cain*, 216 F.3d 518, 521 (5th Cir. 2000). In that situation, the applicant must show jurists of reason would find debatable whether: the habeas petition states a valid claim of the denial of a constitutional right; and the district court's procedural ruling was correct. *Id*.

In determining whether to grant a COA, this court is, *inter alia*, limited "to a threshold inquiry into the underlying merit of [Foster's] claims". *Miller-El*, 537 U.S. at 327. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *Id*. at 336. Instead, the court must make "an overview of the claims in the habeas petition and a general assessment of their merits". *Id*. Because Foster was convicted of capital murder and received the death penalty, "any doubts as to whether a COA should issue must be resolved in [his]

7

favor". ***Hernandez v. Johnson***, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).

For purposes of the mandated threshold inquiry, we recognize that, in ruling on the merits, the district court was required by AEDPA to defer, with limited exceptions, to the state court's resolution of Foster's claims. The exceptions provided by AEDPA turn on the character of the state court's ruling.

First, such deference is mandated both for questions of law and for mixed questions of law and fact, unless the state court's "decision ... was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. § 2254(d)(1); *see* ***Hill v. Johnson***, 210 F.3d 481, 488 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court's decision is "contrary to clearly established federal law" under § 2254(d)(1) "if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts". ***Miniel v. Cockrell***, 339 F.3d 331, 337 (5th Cir. 2003), *cert. denied*, 540 U.S. 1179 (2004).

Second, such deference is required for the state court's "decision [unless it] was based on an unreasonable determination of the facts in [the] light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). On the merits,

8

pursuant to AEDPA, the state court's factual findings are presumed correct; in district court, Foster had "the burden of rebutting [that] presumption ... by clear and convincing evidence". 28 U.S.C. § 2254(e)(1). This threshold inquiry is considered against the elements for Foster's claim. Again, it is but one of the procedures mandated by AEDPA for deciding whether a COA should be granted.

As presented in state and federal court, Foster seeks a COA for his claim he is innocent, as proven by: Dillard's testimony during a state-habeas evidentiary hearing; and an affidavit from Steen presented for the first time during the federal-habeas proceeding. Before addressing the request, we must decide whether to consider it because of its untimeliness.

1.

Foster's initial COA request to our court was filed on 1 June 2005 and addressed two claims (neither concerned actual innocence). On 29 June 2005, the State filed its opposition; it did not, of course, address actual-innocence, as Foster had not raised the issue. Foster filed: a reply brief on 27 July 2005 for his COA request; and a sur-reply on 11 October 2005 to the State's reply brief regarding its appeal from the conditional habeas-grant, in which he also addressed his COA request. Neither of Foster's reply briefs addressed actual-innocence or claimed he had inadvertently failed to include that issue in his COA application. (It is assumed

9

that, in replying to the State's briefs, Foster's counsel read them. Obviously, in doing so, he should have noticed an actual-innocence claim was *not* addressed.)

Foster did not make this inadvertent-failure assertion until after our 13 March 2006 COA-denial. On 27 March 2006, approximately ten months after Foster's initial COA application was filed, Foster's counsel filed a "Motion for Consideration of Inadvertently Omitted Issue", claiming that, while reading our 13 March COA denial, he "immediately noticed that the opinion addressed only two issues; there was no mention regarding [the actual-innocence claim]". That motion stated: "Counsel's fifty-page brief [for the initial request] included twelve pages of argument about whether a reasonable and fair jury would more likely have acquitted Mr. Foster in light of the accounts of Dwayne Dillard and Julius Steen"; and this issue's not being addressed in the 13 March COA-denial "alarmed counsel". Counsel then acknowledged he had failed in the initial application to submit the portion of his brief addressing Dillard and Steen, and asked our court to consider the omitted issue.

Pursuant to AEDPA, there is no limitations period governing the filing of COA requests. Of course, Foster's 4 April 2005 notice of appeal satisfied the related limitations period for filing an appeal. FED. R. APP. P. 4. In any event, in a situation such as this, where Foster appealed the denial of relief on various

10

claims and requested a COA for that, he generally would have waived any claim not addressed in his COA application/brief.

Foster's situation, however, is somewhat different than the usual case where a party waives a claim by failing to raise it. Here, counsel claims he unintentionally failed to do so because he filed the wrong brief.

As noted, Foster's initial COA request to our court was denied. Generally, we would *not* consider this new request. Because the State's appeal is pending in our court, however, we will consider the COA request for the actual-innocence claim. Counsel in future cases are warned that, should they seek to likewise raise "inadvertantly-omitted" COA requests, they may well *not* be allowed to do so, for obvious reasons. In this instance, counsel's purported reasons for failing to initially request a COA on this issue are nothing short of inexcusable.

2.

Pursuant to a plea agreement, Steen testified at trial against Brown and Foster; Dillard did *not* testify. Foster maintains Dillard's testimony in the state-habeas proceeding and Steen's affidavit in the federal-habeas proceeding (clarifying Steen's trial testimony) demonstrate Foster's actual innocence and ineligibility for the death penalty.

As of the state-habeas evidentiary hearing, Dillard had already begun serving a life-sentence for another capital murder he

11

committed with Steen.  Dillard testified:  there was no agreement to commit robberies the night of Michael LaHood's murder; although he (Dillard) provided the gun, he had nothing to do with the robberies or the murder; Foster was just the group's driver, not the getaway driver;  after the second robbery, Foster said he wanted to stop, so Dillard took the gun back and believed no more robberies would be committed that night; he directed Foster to drive through the residential area where Michael LaHood lived; Foster stopped because a woman flagged the car down and because Steen told him to;  there was no agreement to rob Michael LaHood; and, after Brown shot Michael LaHood, Foster tried to leave but Dillard would not let him.

Steen's affidavit in the federal-habeas proceedings stated: concerning his trial testimony that he "understood what was probably fixing to go down" when Brown exited the vehicle at Michael LaHood's residence, he understood, at that point (but not before), what might happen;  Steen did *not* think Foster knew what was going to happen; there was no agreement to commit robbery; everyone was shocked after Brown shot Michael LaHood; and by testifying at trial he needed to stay awake because he was "riding shotgun", he meant a person gets a "good view in the front seat", not that riding in that position means committing robberies.

In denying habeas relief in March 2002, the Court of Criminal Appeals did not address Dillard's testimony.  Steen's affidavit, of

12

course, was also not mentioned, because it was presented for the first time during federal-habeas proceedings.

In addressing Foster's actual-innocence claim, the district court first noted *Herrera v. Collins*, 506 U.S. 390, 400 (1993), precludes that claim's being brought as an independent ground for habeas relief. *Foster*, 2005 U.S. Dist. LEXIS 13862, at *40-42. Rather, the district court noted an actual-innocence claim may be used to raise an otherwise procedurally-defaulted habeas claim. It cited *Schlup v. Delo*, 513 U.S. 298, 327 (1995), for the following proposition: "[A] petitioner seeking to surmount a procedural default through a showing of 'actual innocence' must establish it is more likely than not that, in [the] light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt". *Id*. at *43.

The district court then stated: Dillard's new testimony and Steen's affidavit merely repeat the same non-credible assertions made by Brown's trial testimony and Foster's statements to police (namely, that Brown exited the vehicle at Michael LaHood's house only to get Patrick's telephone number); and the jury rejected Brown's testimony by finding him guilty of capital murder. The court also stated the jury implicitly rejected Foster's claims to police that: he was not involved in the night's robberies; he had no idea Brown carried a gun when he approached Michael LaHood; and, when Brown exited the vehicle, Foster did not think Brown was going

13

to rob Michael LaHood. The court held: because Dillard's new testimony and Steen's affidavit merely repeat testimony the jury heard and rejected, there is no reasonable possibility any rational jury would have found Foster not guilty of capital murder based on that testimony and affidavit. *Foster*, 2005 U.S. Dist. LEXIS 13862, at *48-49.

Foster conceded during oral argument his actual-innocence claim is raised here only as a stand-alone claim. As the district court held, actual-innocence is *not* an independently cognizable federal-habeas claim. *Dowthitt v. Johnson*, 230 F.3d 733, 741-42 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001); *see also **Graves v. Cockrell***, 351 F.3d 143, 151 (5th Cir. 2003).

The Supreme Court recently decided *House v. Bell*, 126 S. Ct. 2064 (2006), a habeas case in which "House, protesting his innocence, [sought] access to federal court to pursue habeas corpus relief based on constitutional claims that are procedurally barred under state law", *id*. at 2068; *and* as a stand-alone claim for such relief, *id*. at 2086. The Court concluded House provided substantial evidence suggesting he might not have committed the murder for which he was convicted; and thus held he satisfied the *Schlup* standard, enabling him to use his actual-innocence claim to raise an otherwise procedurally barred habeas claim. *Id*. at 2087.

The Court, however, "decline[d] to resolve" whether *Herrera* left open the possibility of stand-alone actual-innocence claims.

14

*Id*. It further stated: even if a stand-alone actual-innocence claim were hypothetically cognizable, House was not entitled to relief on that basis, despite meeting the *Schlup* standard. *Id*. at 2087.

Absent an en banc, or intervening Supreme Court, decision, one panel of this court may not overrule a prior panel's decision. *E.g.*, *Hogue v. Johnson*, 131 F.3d 466, 491 (5th Cir. 1997), *cert. denied*, 523 U.S. 1014 (1998). Because *House* did not change the law to recognize the validity of stand-alone actual-innocence claims, this panel may not entertain Foster's stand-alone claim. *E.g.*, *Dowthitt*, 230 F.3d at 741-42. Accordingly, pursuant to the earlier-described two-prong AEDPA standard for whether to grant a COA, Foster is not entitled to a COA on this claim.

### B.

In reviewing, under the deferential AEDPA standard, the district court's granting conditional habeas relief, its findings are reviewed for clear error; conclusions of law, *de novo*. *E.g.*, *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004). As discussed, pursuant to AEDPA, federal-habeas relief cannot be granted "unless the challenged state court proceeding resulted in: (1) 'a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States', 28 U.S.C. 2254(d)(1); or (2) 'a decision that was

15

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding'. 28 U.S.C. 2254(d)(2)". *Id*. A decision is *not* unreasonable merely because it is incorrect; to be unreasonable, it must be both incorrect *and* objectively unreasonable. *Miller v. Dretke*, 420 F.3d 356, 360 (5th Cir. 2005).

As also discussed, a state court reaches an unreasonable result when it correctly identifies the relevant precedent but unreasonably applies that precedent to the facts. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Habeas relief will *not* be granted when the "state court, at a minimum, reaches a satisfactory conclusion". *Miller*, 420 F.3d at 360 (internal quotation omitted).

On direct appeal and in his federal-habeas petition, Foster claimed: pursuant to the Eighth Amendment, he was ineligible for the death penalty "because he did not kill, attempt to kill, or intend to kill [Michael] LaHood". *Foster*, 2005 U.S. Dist. LEXIS 13862, at *76. At oral argument here, Foster based his Eighth Amendment challenge largely on the above-described actual-innocence claim, asserting he was ineligible for the death penalty because he was actually innocent. Because we deny Foster a COA on that claim, we do *not* consider it. Instead, we consider his Eighth Amendment claim as presented to, and decided by, both the Court of Criminal Appeals on direct appeal and the district court.

16

In rejecting this claim on direct appeal, the Court of Criminal Appeals held the evidence supported the jury's finding on the following special issue, and with it, the death penalty. *See TCCA opn*. at 31-32. That special issue asked whether the jury "found from the evidence beyond a reasonable doubt that Kenneth Foster *actually caused* the deceased's death, or that he *intended to kill* the deceased or another, *or that he anticipated that a human life would be taken*". *Id*. at 12 (internal quotation omitted) (emphasis added). Because it was undisputed that Brown shot Michael LaHood, the issue relevant to Foster was whether the jury found he "anticipated that a human life would be taken". *Id*.

The Court of Criminal Appeals had previously rejected similar claims in *Lawton v. State*, 913 S.W.2d 542, 555 (Tex. Crim. App. 1995), because, "before an accused can be convicted of capital murder as a party [as Foster was], it must first be determined beyond a reasonable doubt that the accused harbored a specific intent to promote or assist in the commission of intentional murder". *TCCA opn*. at 32. Therefore, for Foster's direct appeal, the court held it was inconsequential the jury may have found "Foster only anticipated that death would result" from his participation in the conspiracy. *Id*.

The district court held this direct-appeal holding unreasonable under AEDPA. In addressing Foster's Eighth Amendment claim, the court first discussed applicable Supreme Court

17

precedent.  ***Enmund***, 458 U.S. 782, held the death penalty could not be imposed on a getaway driver who not only neither committed murder nor intended anyone be killed, but also did not even witness the murder.  ***Tison***, 481 U.S. at 158, however, created an exception to ***Enmund***, holding the death sentence constitutional for an accomplice: (1) whose participation in the crime was major; and (2) who displayed "reckless indifference to human life".  ***Tison*** upheld the death penalty for two brothers who helped arm prisoners for a successful prison escape; aided that escape; participated in the robbery of a family to further the escape; and then did nothing to stop the murder of that family.  ***Id***. at 151.

Relying upon Supreme Court precedent discussed *infra*, the district court granted Foster conditional habeas relief because a jury had not made *both* requisite ***Tison*** findings:  (1) that Foster substantially participated in the robbery-conspiracy; and (2) that he acted with reckless indifference to human life.  ***Foster***, 2005 U.S. Dist. LEXIS 13862, at *82-83.  In so holding, as also discussed *infra*, the court held the jury had made the reckless-indifference finding.  It held, however, that the jury had *not* been required to make the first of the two required findings:  that Foster "had major participation in the felony committed, i.e., the armed robbery conspiracy that culminated in [Michael] LaHood's murder".  ***Id***. at *80 (internal quotation omitted).

18

Along this line, the district court did not, however, accept Foster's claim that, as the group's driver, he was *per se* ineligible for the death penalty. The court ruled a rational jury unquestionably could have made the above requisite major-participant finding, based on the following evidence: when arrested, Foster had a pair of cellular telephones from robberies committed a few nights before the murder of Michael LaHood; on the night Michael LaHood was killed, Foster drove his co-defendants around neighborhoods with which he was familiar; he shared in the proceeds of the night's earlier robberies; no evidence suggested anyone directed Foster "to take up his extended pursuit" of Mary Patrick's vehicle as she drove to Michael LaHood's house; and Steen believed Foster was in charge that night because he controlled where the conspirators drove and when they stopped. *Id*. at *81.

Nevertheless, the district court held *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 536 U.S. 584 (2002), and *Blakely v. Washington*, 542 U.S. 296 (2004), "make clear that *only a jury* can make the factual determinations necessary to impose a sentence of death on a criminal defendant". *Id.* at *82 (emphasis added). Foster's conviction became final, however, in April 2000 (when the Supreme Court denied review from his direct appeal), before *Apprendi*, *Ring*, and *Blakely* were decided. None of those cases applies retroactively. *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (*Ring* does not apply retroactively); *In re Elwood*, 408

19

F.3d 211, 213 (5th Cir. 2005)(*Apprendi* and *Blakely* do not apply retroactively). Therefore, they do *not* apply to this case.

Accordingly, because, as the district court noted, no evidence supports finding Foster intentionally murdered Michael LaHood or intended that he be murdered, the court should have examined the entire record of the state court proceedings to determine whether any state court made the requisite *Tison*/*Enmund* findings. *Clark v. Johnson*, 227 F.3d 273, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

Similar to the Court of Criminal Appeals' decision reviewed in *Clark*, it appears the Court of Criminal Appeals upheld Foster's death-sentence on a flawed legal theory, based on its 1995 decision in *Lawton*. As noted *supra*, the Court of Criminal Appeals held that, before convicting Foster, the jury had to determine he specifically intended either to murder Michael LaHood or promote or assist in that murder. The cases *Lawton* cites (for example, *Tucker v. State*, 771 S.W.2d 523, 530 (Tex. Crim. App. 1988)) discuss the § 7.02(a) instruction, which states a defendant tried for capital murder as an accomplice is death-penalty eligible only if he intended to promote or assist in the commission of a capital murder. TEX. PENAL CODE § 7.02(a).

Foster's jury was instructed pursuant to both §§ 7.02(a) and (b). Section 7.02(b) does not require the same level of intent. It allowed the jury to convict Foster if it found he should have

20

*anticipated* a co-conspirator might commit murder, even if Foster did not intend for that murder to occur. TEX. PENAL CODE § 7.02(b). Therefore, the Court of Criminal Appeals erred by relying on **Lawton** to uphold Foster's death sentence.

As discussed, our review does not end merely because the state court's decision was based on flawed reasoning. **Neal v. Puckett**, 286 F.3d 230, 246 (5th Cir. 2002) (federal habeas court reviews only a state court's decision, *not* the reasoning behind that decision)*, cert. denied*, 537 U.S. 1104 (2003). Therefore, as in **Clark**, we examine the entire state-court record to determine whether *any* state court made the requisite **Enmund**/**Tison** findings: (1) that Foster played a major role in the criminal activities leading to Michael LaHood's death; and (2) that he displayed reckless indifference to human life.

1.

Addressing the second required finding first, and as the district court held, Foster obviously displayed reckless indifference to human life. The jury found as much when it answered the earlier-described special issue in the affirmative (the jury could not answer that issue in the affirmative unless it found, at a minimum, Foster anticipated a life would be taken). The district court stated:

> [I]nsofar as [Foster] argues there was legally
> insufficient evidence showing that he acted
> with *reckless disregard for human life*, *that*

21

> *contention lacks any arguable merit*. Foster
> could not have helped but anticipate the
> possibility that a human life would be taken
> in the course of one or more of his co-
> conspirators' armed robberies. By
> transporting a pair of pot-smoking armed
> robbers to and from one robbery after another,
> Foster clearly displayed the type of "reckless
> disregard for human life" the Supreme Court
> had in mind when it employed that term in
> *Tison*. Foster knowingly engaged in criminal
> activities known to carry a grave risk of
> death....

*Foster*, 2005 U.S. Dist. LEXIS 13862, at *78-79 (emphasis added).

2.

Despite the above-described district-court holding to the contrary, there was a state-court finding that Foster played a major role in the criminal activity culminating in Michael LaHood's murder. First, it is at least arguable the jury made that finding. In any event, the Court of Criminal Appeals did. Accordingly, its ruling was not unreasonable under AEDPA.

a.

As discussed, the jury was allowed to find Foster guilty of capital murder by finding he anticipated a life would be taken, a lesser standard than requiring intent to kill. Concomitantly, the jury could have used the special issues to find Foster ineligible for the death penalty based on his role in the crime. For example, the jury found Foster anticipated a life would be taken; but, had it believed Foster did not play a major role in the activity leading to Michael LaHood's murder, it could have found, for

22

another of the special issues, that he would not likely be dangerous in the future and, thus, answered that special issue in the negative, notwithstanding the evidence presented for Foster's criminal conduct on other occasions.

It did not. Instead, it found Foster anticipated a life would be taken and presented a risk of future dangerousness; therefore, it recommended he receive the death sentence. As discussed, the special issues, however, did not require the jury to find Foster had specific intent to kill; nor did they explicitly require the jury to consider the **Enmund**/**Tison** requirements. Therefore, as noted above, we consider the Court of Criminal Appeals' direct-appeal opinion.

b.

That court denied Foster's claim that the evidence was insufficient to "support a finding that Foster deliberately engaged in any culpable conduct that caused death". **Foster v. State**, No. 72,853 at 12. It noted the trial evidence demonstrated Foster: (1) actively participated in the group's robberies; (2) knew members of the group were using a gun to commit them; (3) shared the proceeds from them; (4) was the getaway driver; and (5) expressed no remorse when Michael LaHood was murdered. **Id**. at 13. Therefore, the court held a rational jury could have determined Foster anticipated a life would be taken. **Id**. In addition, the court noted: after Brown shot Michael LaHood, Foster "drove him

23

away ... , all the while telling Brown to hide the gun", *id*. at 10; further, when police pulled over the vehicle, Foster encouraged Brown to hide the gun in his underwear, *id*. at 5.

These rulings demonstrate the Court of Criminal Appeals determined Foster was, *inter alia*, a major participant in the night's criminal activities, including the robbery and murder of Michael LaHood. That court, like the jury, rejected Foster's claims that he did not participate in the robberies and did not know Brown was planning to rob Michael LaHood.

A death sentence violates the Eighth Amendment if it is not proportional to the crime for which the defendant was convicted. *See **Tison***, 481 U.S. at 148 (noting death sentence for armed robbery violates the Eighth Amendment because it is excessive). Furthermore, as the Supreme Court has held, the death penalty serves two main purposes: deterrence and retribution. ***Id***. at 148-49. The rationale of retribution is to hold a criminal defendant liable in direct proportion to his personal culpability. ***Id***. at 149. ***Enmund*** held the death penalty excessive, in violation of the Eighth Amendment, because the defendant's personal conduct was so attenuated from the murder it did not warrant that sentence. ***Enmund***, 458 U.S. at 798. On the other hand, the Court held the Tison brothers' substantial role in the activities leading to murder demonstrated the personal culpability justifying such a sentence. ***Tison***, 481 U.S. at 158.

24

In a number of ways, the Court of Criminal Appeals' rulings regarding Foster are similar to those noted by the Supreme Court in upholding the death sentence for the non-shooters in *Tison*. There, the Court discussed the findings by the Arizona Supreme Court, which had noted: "After the killings [the brothers] did nothing to disassociate [themselves] from [the shooters], but instead used the victims' car to continue on the joint venture, a venture that lasted several more days". *Tison*, 481 U.S. at 145. In addition, the Supreme Court noted the brothers made "no effort to assist the victims before, during, or after the shooting". *Id*. at 151. Like the Tison brothers, Foster did nothing to disassociate himself from Brown after the shooting; instead, as the Court of Criminal Appeals noted, he waited for Brown to return to the car and drove away, later telling Brown to hide the murder weapon.

Further, *Tison* noted both of the death-sentenced non-shooters assisted, in the prison breakout, a man they "knew had killed a prison guard in the course of a previous escape attempt". *Id*.; *see also id*. at 139 (noting previous escape attempt was "a number of years" before the one in issue). The facts in *Tison* are analogous to those here. In denying Foster's claim that the evidence was insufficient to support the jury's affirmative answer to the future-dangerousness special issue, the Court of Criminal Appeals noted: a day or two before Michael LaHood was murdered, Foster, Steen, Dillard, and Brown had participated in another *armed*

25

*robbery*, **TCCA opn.** at 11; and, previously, Foster and a friend shot at people in a truck while driving alongside them on a highway, **id**. at 12. In sum, as stated by the district court, discussed *supra*, a rational fact finder could have found: Foster was a major participant; and he acted with reckless indifference to human life. That the other robbery did not result in a murder in no way suggests Foster did not play a major role in either that robbery or the one leading to Michael LaHood's murder. This point is further supported by Foster's having previously fired a weapon into the moving vehicle.

As stated above, and pursuant to AEDPA's deferential standard of review, because the Court of Criminal Appeals (and arguably the jury) made the requisite **Enmund**/**Tison** findings, that court's decision was *not* unreasonable. Accordingly, the district court erred in granting Foster habeas relief.

### III.

For the foregoing reasons, a COA is **DENIED**; the conditional habeas relief is **VACATED**; and habeas relief is **DENIED**.

*COA DENIED; CONDITIONAL HABEAS GRANT VACATED;*

*HABEAS RELIEF DENIED*