# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20169

United States Court of Appeals
Fifth Circuit

**FILED**
June 21, 2016

Lyle W. Cayce
Clerk

MICHAEL GEORGE LAHOOD,

Petitioner - Appellee

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-1874

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:*

This is a federal habeas corpus case brought by a state prisoner, Michael George LaHood. The district court found that confidence in the outcome of the trial was undermined because of the evidence supporting at least a strong suspicion that LaHood was incompetent. The district court entered final judgment granting conditional habeas relief in the event that the state of Texas

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

did not retry LaHood within sixty days. The district court stayed the order pending completion of all appeals or the expiration of time for seeking any appeal. We **REVERSE**.

## I.     BACKGROUND AND PROCEDURAL HISTORY

LaHood was charged by indictment in Harris County, Texas with the first-degree felony offenses of aggravated kidnapping and aggravated sexual assault. LaHood pleaded not guilty, but a jury found him guilty as charged of both offenses. On the question of punishment, the jury found the state of Texas's enhancement allegation to be true and sentenced LaHood to thirty years of imprisonment on each conviction to be served concurrently.

On direct appeal in Texas, LaHood claimed that the trial court erred under *Pate v. Robinson*, 383 U.S. 375 (1966) in failing to *sua sponte* conduct an inquiry into LaHood's legal competency. *See LaHood v. State*, 171 S.W.3d 613, 618 (Tex. Ct. App. 2005). The Fourteenth Court of Appeals of Texas, however, affirmed his convictions by written opinion. *Id.* Subsequently, LaHood filed applications for a state writ of habeas corpus challenging his convictions. The state habeas trial court entered written findings of fact and recommended that relief be denied. The Texas Court of Criminal Appeals (the "TCCA") remanded the matter to the state habeas trial court for further findings of fact after LaHood provided the affidavits of two medical experts who concluded that there was evidence in the record showing that LaHood was incompetent to stand trial.

Nevertheless, the TCCA ultimately denied his applications on June 26, 2013. *See Ex parte LaHood*, 401 S.W.3d 45 (Tex. Ct. Crim. App. 2013). The TCCA found that LaHood's trial counsel was deficient for failing to investigate LaHood's mental-health history. *Id.* at 52−57. Nevertheless, the TCCA found that LaHood still failed to prove prejudice under *Strickland v. Washington*, 466

U.S. 668 (1984) because he had not shown a reasonable probability that the fact finder would have found him incompetent to stand trial. *Id.*

Thereafter, on June 26, 2013, LaHood filed a federal petition for a writ of habeas corpus. LaHood's present federal habeas petition argues: (1) that trial counsel was ineffective for failing to investigate his severe ongoing illness and clear indicators of incompetency; and (2) that the trial court denied him his due process right to a fair trial by failing to *sua sponte* inquire into his competency. The district court conditionally granted LaHood's petition after finding him entitled to relief on both claims.

## A. LAHOOD'S COMPETENCE AT TRIAL

LaHood points to several statements and actions at trial which he argues should have alerted his attorney and the court to his incompetence. When questioned by his attorney regarding his decision to testify, he indicated that he felt coerced. He then noted that his attorney advised him not to take the stand, but he wanted to give his "side of the story." Ultimately, LaHood testified and explained his relationship with the victim along with their prior drug use and sexual history. He contradicted the victim's assertion that she had been kidnapped by testifying that the victim drove the car the entire way to Houston and noted that they stopped in multiple populated areas where theoretically she could have alerted someone if she felt endangered. He also testified that the purpose of the trip was to purchase materials for making methamphetamine and that the victim purchased ammonia for its manufacture.

Following LaHood's direct testimony, the court conducted an on-the-record conference regarding the State's intent to impeach LaHood with his prior convictions. LaHood interrupted the State's attorney by calling a prior conviction "incorrect." The trial court stated, "Mr. LaHood, I don't want to hear from you anymore." The parties continued their discussion and LaHood again

interrupted by stating, "I need my medicine." The trial court called the jury into the courtroom and the State began LaHood's cross-examination. In response to the prosecutor's first question, LaHood stated, "I'm not sure I understand the question. I didn't get my psych meds today. I'm having trouble understanding things, sir." LaHood then said that he was "[v]ery nervous again." The State resumed questioning and LaHood stated, "I need my medication. This is ridiculous. I am so uncomfortable. I'm seeing the lights blink. I take medication for manic depression, schizophrenia." The trial court then removed the jury from the courtroom. Outside of the jury's presence, LaHood continued, "I haven't had it. This is not right." The trial court then conducted an off-the-record conference. The following day the court conducted an on-the-record conference in which LaHood again attempted to speak to the court directly. LaHood accused the judge of wanting to find him in contempt.

LaHood's trial counsel, Leah Borg, conducted a re-direct examination during which she addressed his behavior at trial the previous day. He told the jury that he had trouble testifying because he is "manic depressive schizo-affective" and takes medication. When asked if he had received his medication on that day he stated, "Not for four days in a row. Twice I take it. I only received part of it." He testified that he did not receive his medication on the first day of trial and only received part of his medication on the second. When asked how he reacts when he doesn't take his medication, he stated, "I get very stressed out, shaky and I hallucinate. Sometime auditory . . ." He noted that the day before he had not received his medication, nor during the prior evening. He then testified that the morning of the present testimony he was given only some of his medications. He added that a prison employee had given him "triple doses" the night before, so he was "a lot calmer." Borg continued questioning LaHood regarding the offense, the prosecutor conducted a re-cross and then the jury was removed.

4

No. 15-20169

Outside of the jury's presence, the trial court began a hearing to determine the admissibility of certain evidence. LaHood made several out-of-turn remarks regarding the falsity of the State's information and his innocence. The jury deliberated and returned a guilty verdict. The court's docket sheet noted that LaHood had attempted suicide while the jury was deliberating punishment.

During the penalty phase of the trial, LaHood blurted out "Shelley is using drugs right now." During the prosecution's questioning of a witness, he interrupted again with several outbursts. LaHood then took the stand as a punishment witness for the defense and testified regarding his mental illness, his medications, and his drug addictions.

During the defense's closing argument at punishment, his attorney cited his mental illness and addictive personality. She cited his suicide attempt, past hospitalizations, and outbursts at trial. LaHood later told the court, "Your Honor, I wasn't mentally competent. I mean, when it happened and during the trial, and for that matter, right now. I mean, I'm still not getting my medication right. . . . I really would like an evaluation through the state hospital."

## B. DIRECT APPEAL

On direct appeal, LaHood claimed that the trial court erred by failing to *sua sponte* conduct a competency hearing despite LaHood's statements and behavior at trial, which LaHood asserts entitled him to a competency hearing. *LaHood v. State*, 171 S.W.3d 613, 617–18 (Tex. Ct. App. 2005). The Fourteenth Court of Appeals of Texas explained that under Texas Code of Criminal Procedure, a defendant is presumed competent to stand trial unless proven incompetent by a preponderance of the evidence, and incompetence is proven by showing that the defendant "does not have (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, or (2) rational as well as factual understanding of the proceedings against

5

him." *Id.* at 618. *See also Dusky v. United States*, 362 U.S. 402, 402 (1960) (test for incompetency is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him"); *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (same).

The Fourteenth Court of Appeals of Texas concluded that LaHood's evidence was not sufficient to show the trial court abused its discretion by not *sua sponte* holding a competency hearing for the following reasons:

> The fact that appellant made outbursts during trial is not evidence of an inability to communicate with counsel or to appreciate the proceedings against him. [*Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999)).] Although inappropriate, the outbursts were immediate and logical responses to statements made or questions asked during trial. *Id.* If such actions were enough to demonstrate incompetency, a defendant could easily avoid prosecution through immature behavior. *Id.* Similarly, the fact that he may have been on psychiatric medication during trial and had a history of mental problems did not mandate a competency inquiry absent evidence of a present inability to communicate or understand the proceedings. *See id.* at 395–96.

> The only time during trial that there was any indication appellant was having difficulty understanding the proceedings was on his second day of testimony when he stated that he was uncomfortable and seeing the lights blink and had not had his medication. The judge immediately recessed the proceedings. The next day, appellant continued testifying without any apparent difficulty, and he explained that he was doing much better because he had received his medication the night before. Because it appears from the record that the trial court acted appropriately in dealing with appellant's difficulty in testifying on the second day, and there is no indication in the record that appellant did not understand the proceedings or had trouble communicating during any other portion of the trial, we find that the trial court did not abuse its discretion in failing to *sua sponte* inquire into appellant's competency to stand trial.

*LaHood*, 171 S.W.3d at 619. The court also noted that the trial court "was in a much better position . . . to assess appellant's demeanor both during his alleged period of confusion and during the rest of the trial," and "beyond his own testimony, appellant cites no other evidence regarding incompetency." *Id.* at 619 n.2.

## C. STATE HABEAS PROCEEDINGS

During the state habeas proceeding, LaHood submitted his mental health, medical, and medication records from the Harris County Jail as well as affidavits from mental health experts. LaHood's inmate medical records reflect that he had been diagnosed with bipolar and schizoaffective disorder. A notation in LaHood's prison medical records shows that he was "somehow missing" his evening medications and becoming "manic." LaHood's father submitted an affidavit, averring that LaHood suffered from mental illness and complained to him during trial that he was not properly receiving his medication. LaHood's former fiancée, Elizabeth Patterson, submitted an affidavit stating that she had informed trial counsel that she had important information regarding LaHood's mental health. LaHood provided the affidavits of two medical experts who each concluded he was incompetent to stand trial. According to the experts, that conclusion was supported by evidence in the trial transcripts and medical records.

The state habeas trial court initially found that the record left unresolved issues as to trial counsel's assistance and ordered trial counsel, Leah Borg, to submit a responsive affidavit. She described her client as having a "misogynistic attitude with a need to dominate and exercise control over women. . . ." She also stated that LaHood is a malingerer and "engaged in . . . antics designed to create the illusion of incompetency, but which appeared to be nothing more than an act." To support her assertions, she cited to pages of cogent notes written by LaHood during trial, although she could no longer

No. 15-20169

locate the notes in question. Borg admitted that LaHood was on medications for his mental illness and that, without his medication, he *could* become incompetent. Nevertheless, LaHood's attorney maintained that the fact that he was taking medication was further support for her conclusion that he was legally competent.

Borg stated in her affidavit that LaHood was able to make an informed, knowing, and intelligent decision to testify and that they were able to thoroughly discuss trial procedures. She noted that he knew the difference between "no contest" and "not guilty" and asserted that at trial. She indicated that they discussed the potential for impeachment. She also averred that his suicide attempt after the verdict was designed to manipulate because he "made a big show of it" and did it in a public setting rather than waiting until he returned to jail. The state habeas trial court recommended that the TCCA deny relief.

The TCCA considered LaHood's behavior during the trial. *Ex parte Lahood,* 401 S.W.3d at 54–55. The TCCA noted that during the first day of trial, LaHood testified for about an hour "with no problems"—LaHood "was able to shift back and forth to different time periods in his story," "relayed a detailed account of his version of events in a constant effort to undermine the victim's testimony," and, at one point, even stated that he did not want to incriminate himself when asked about his involvement with methamphetamine production. *Id.* On the second day, LaHood's behavior changed. *Id.* LaHood stated that the lights were blinking. *Id.* at 56. He asked for medication. *Id.* However, between those "outbursts," LaHood rationally advised the court that he wanted certain medical records subpoenaed as part of his defense. *Id.* After LaHood stated that his medication had been withheld, the trial court recessed for the day. *Id.* On the third day, LaHood continued to

8

interrupt the trial with comments, according to the TCCA, intended to introduce reasonable doubt. *Id.* at 56 n.9.

The TCCA considered LaHood's expert's testimony that LaHood's lack of medication while in jail, as well as the increase in dosage at the time of trial, caused LaHood to mentally decompensate such that LaHood's decision to testify on his own behalf was not made with a reasonable degree of rational understanding. *Id.* at 54. The TCCA also considered the sworn affidavit of LaHood's defense counsel. *Id.* at 54–55. She said that LaHood had decided to testify prior to the trial and while he was properly medicated. *Id.* The TCCA also reviewed the trial court record to see if LaHood showed signs of a lack of rational understanding when he took the stand. *Id.* At trial, defense counsel asked LaHood about whether he had previously stated that he intended to testify on his own behalf, to which LaHood responded on the stand that he only intended to do so as "a last result (sic)" after hearing all the evidence. *Id.* at 55. LaHood explained that after hearing the evidence, if he thought the defense had not established reasonable doubt, then he wanted to testify on his own behalf. *Id.* He stated that he otherwise did not want to testify because the prosecutor was going to cross-examine him. *Id.* The TCCA explained that LaHood's testimony at trial showed that he "engaged in a reasoned choice of legal strategies and options," as he understood he faced a "risky choice of testifying in his own defense if counsel could not establish reasonable doubt" and "acknowledged that he understood the adversarial nature of the proceedings, when he stated that he knew he would be exposed to cross-examination if he testified." *Id.*

The TCCA noted that LaHood's experts testified that his behavior was consistent with the mis-administration of psychoactive medications. *See id.* at 56. Even so, the TCCA explained that the record evidence indicated that LaHood "was competent during his testimony because (1) he was able to

disclose pertinent facts and events of the case, (2) he understood the adversarial nature of the proceedings, and (3) he put on a defense with a competing theory of the events that would have resulted in a not guilty verdict if the jury believed him." *Id.* The TCCA emphasized that even if a person is "suffering from a severe mental disease or defect or . . . [is] highly medicated, . . . he will be competent to stand trial if he still has the ability to meaningfully consult with his attorney and he has a rational as well as factual understanding of the charged offense and trial proceedings." *Id.* at 56 (internal quotation marks omitted).

The TCCA agreed with the habeas trial court, which found that LaHood's "direct examination showed considerable clarity of thought,"[1] that his "outbursts regarding medication and lack of comprehension began only on cross-examination," and that "the only opportunity for the victim's testimony to be rebutted was by [LaHood]," such that his decision to testify made sense. *Id.* at 56–57. The TCCA stated: "Even if [LaHood] failed to receive some of his medication, there is nothing in the record that leads us to believe [LaHood] lost the ability to understand the proceedings or rationally confer with his counsel."[2] *Id.* at 56.

The TCCA concluded that LaHood's counsel rendered deficient representation, but that LaHood had not shown *Strickland* prejudice. *Id.* at 51,

---

[1] The TCCA explained: "He testified that the victim drove the car to Houston (directly contradicting her assertion that she had been kidnapped), that they stopped in multiple populated areas where the victim could have alerted someone if she was in trouble, and that the victim packed for the trip (directly contradicting her assertion that the fact she had a hairbrush, clothes, and a toothbrush was merely coincidental)." *Ex parte LaHood*, 401 S.W.3d at 57.

[2] The TCCA also noted that its conclusion did not ignore LaHood's expert's opinion that it is common for individuals with severe mental illness to appear lucid for portions of proceedings, yet be incompetent during other portions of the proceeding. *Id.* at 57. The TCCA explained that "neither habeas counsel nor [LaHood]'s experts have provided specific examples of [LaHood]'s [allegedly incompetent] behavior sufficient to meet [LaHood]'s burden

57. The TCCA explained that the "focus of the prejudice inquiry here is whether an applicant can show that there was a reasonable probability that he would have been found incompetent to stand trial if the issue of competency had been raised and fully considered," as "[a]nything less than a finding of incompetence would not have changed the outcome." *Id.* at 54. In a thorough opinion discussing the record evidence, the TCCA concluded that LaHood had not met his burden of proof for *Strickland* prejudice—*i.e.*, LaHood had not presented evidence to establish a "reasonable probability that a fact-finder would have found him incompetent to stand trial." *Id.* at 54–57.

## II.     JURISDICTION

This is a federal habeas corpus case brought by a state prisoner pursuant to 28 U.S.C. §§ 2241, 2254. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## III.     STANDARD OF REVIEW

A federal petition for habeas relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). "In reviewing a grant of the writ of habeas corpus, we review the district court's findings of fact for clear error." *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). "This court reviews the district court's legal determinations and application of AEDPA *de novo*." *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008) (citing *Foster v. Quarterman*, 466 F.3d 359, 368 (5th Cir. 2006)). "We review *de novo* the district court's disposition of pure issues of law and mixed issues of law and fact." *Valdez*, 274 F.3d at 946 (citing *Barrientes v. Johnson*, 221 F.3d 741, 750 (5th Cir. 2000); *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999)).

---

of proof that he failed to understand the proceedings or that he had an inability to rationally communicate with his counsel." *Id.*

No. 15-20169

The AEDPA provision that guides this court's review is 28 U.S.C. § 2254(d). It provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 97–98 (2011). As this section is applied, questions of law and mixed questions of law and fact are reviewed under subsection (d)(1) of § 2254. *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999) (citing *Drinkard v. Johnson*, 97 F.3d 751, 767−68 (5th Cir. 1996)).

A state court's application of clearly established federal law is "unreasonable" under subsection (d)(1) if the state court "identifies the correct governing principle from Supreme Court precedent, but applies that principle to the case in an objectively unreasonable manner." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc). "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," the decision is not an unreasonable application of federal law. *Harrington*, 562 U.S. at 101. The "unreasonable application" standard under § (d)(1) of AEDPA is meant to be "difficult to meet" such that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. This deferential standard applies because "[s]ection 2254(d) . . . is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03. "The question

under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). When reviewing a state court's legal determination under the "unreasonable application" prong, a federal court may issue habeas relief only "where there is *no possibility* fairminded jurists could disagree that the state court's decision" was an unreasonable application of clearly established Supreme Court precedent. *Harrington*, 562 U.S. at 102 (emphasis added).

Under subsection (d)(2), a factual determination made by a state court is "'presumed to be correct' unless the habeas petitioner rebuts the presumption through 'clear and convincing evidence.'" *Nelson*, 472 F.3d at 292 (quoting 28 U.S.C. § 2254(e)(1)). "[F]ederal habeas courts must make as the starting point of their analysis the state courts' determinations of fact, including that aspect of a 'mixed question' that rests on a finding of fact." *Williams v. Taylor*, 529 U.S. 362, 386, 120 S. Ct. 1495, 1509, 146 L. Ed. 2d 389 (2000). The Supreme Court added that "AEDPA plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." *Id.* (citing H.R. Conf. Rep. No. 104–518, p. 111 (1996)).

## IV.    ANALYSIS

### A. *STRICKLAND* CLAIM

LaHood argues that his defense counsel rendered deficient performance by failing to investigate his mental health and that her failures caused him prejudice. The Supreme Court has elucidated the following standard for defective assistance claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the

defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

The Supreme Court has clarified the interaction between *Strickland* and habeas claims. The Court stated that the "standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (internal citations and quotations omitted). Moreover, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* at 122–23 (citation omitted).

Both the TCCA and the district court found that LaHood's counsel was ineffective[3]—but this alone is not enough for LaHood to succeed. The TCCA concluded that LaHood had not met his burden of proof for *Strickland* prejudice—*i.e.*, LaHood had not presented evidence to establish a "reasonable probability that a fact-finder would have found him incompetent to stand trial." *Ex parte Lahood*, 401 S.W.3d at 54–57. In order to meet this burden, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

---

[3] "Trial counsel provides deficient performance if he fails to investigate a defendant's medical history when he has reason to believe that the defendant suffers from mental health problems." *Roberts v. Dretke*, 381 F.3d 491, 498 (5th Cir. 2004) (citing *Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990)).

No. 15-20169

The district court, however, disagreed with the TCCA's conclusion regarding prejudice and focused on LaHood's expert testimony. The district court determined that habeas relief was warranted because there was "strong evidence before the state habeas court that LaHood was, at best, intermittently competent." The district court asserted that the TCCA's determination was "in complete disregard of expert opinion." The TCCA, however, considered expert opinions proffered by LaHood, but found that a review of all of the evidence revealed that he was competent. The TCCA noted LaHood's ability to actively participate in his defense and his understanding of the adversarial nature of the proceedings. This is a reasonable conclusion that is neither contrary to nor an unreasonable application of Supreme Court precedent.

Here, the district court based its grant of habeas relief on its assertion that the TCCA's conclusion was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." As noted above, § 2254(d)(1) applies to conclusions of law, which includes mixed questions of law and fact. Section (d)(2) only applies to a "determination of the facts." The TCCA was not making a "determination of the facts" but, rather, was making a *legal* conclusion—whether LaHood's evidence showed a reasonable probability that he would have established that he was incompetent to stand trial. The TCCA did not determine that, in fact, LaHood was competent, or that LaHood's counsel's testimony was true—the TCCA was not making factual findings; it was making a legal conclusion about prejudice. The TCCA's conclusion is well supported by the record and is not in error.

## B. DUE PROCESS CLAIM

LaHood also contends that the federal district court correctly determined that he satisfied his burden regarding his due process violation claim. LaHood claims that the trial court erred under *Pate*, in failing to *sua sponte* conduct a

competency hearing. LaHood argues that his statements and behavior at trial entitled him to a competency hearing.

"We start from the proposition that the conviction of a legally incompetent defendant violates constitutional due process." *Mata v. Johnson*, 210 F.3d 324, 329 (5th Cir. 2000). "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). "[I]f the defendant has presented evidence to the trial court, before or during trial, that raises a 'bona fide doubt,' of his competence, *Pate*, 383 U.S. at 385, 86 S.Ct. at 842, 15 L.Ed.2d at 822, the trial court's failure to make further inquiry denies that defendant his constitutional right to a fair trial." *Davis v. Alabama*, 545 F.2d 460, 464 (5th Cir. 1977).

The test for incompetency is whether a defendant "'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Dusky*, 362 U.S. at 402). Mental illness and incompetence, however, are not necessarily coexistent conditions. *See generally McCoy v. Lynaugh*, 874 F.2d 954, 960—61 (5th Cir. 1989); *United States v. Williams*, 819 F.2d 605, 608 (5th Cir. 1987).

The Fourteenth Court of Appeals of Texas resolved LaHood's *Pate* claim on state-law grounds—applying Texas standards for competency hearing procedures that are not contrary to clearly established U.S. Supreme Court precedent. The district court, despite acknowledging that "it is not this federal habeas court's role to question a state court's interpretation of state law," nevertheless overruled the state court's determination that LaHood was not entitled to a competency hearing under Texas law. We are not persuaded that

that there was no possibility that reasonable jurists could disagree that the state court's rejection of LaHood's *Pate* claim was an unreasonable application of U.S. Supreme Court precedent. *Harrington*, 562 U.S. at 102. The district court gave no deference to the state court's view that there was no evidence that LaHood was unable to rationally communicate with his counsel or understand the proceedings rationally and factually, which is the standard for incompetence under both Texas law and U.S. Supreme Court precedent. *See Turner v. State*, 422 S.W.3d 676, 689 (Tex. Crim. App. 2013); *Drope*, 420 U.S. at 171.

The record supports the state court's finding that during the entire trial, LaHood was able to rationally communicate with his counsel and understand the proceedings rationally and factually— the evidence showed that he understood the charges against him, the adversarial process, the government's burden to prove its case beyond a reasonable doubt, and the risk of testifying on his own behalf. The trial court was able to observe LaHood and address LaHood's demeanor. Further, his own attorney asserted that he understood legal strategy along with the risks of testifying. The district court improperly substituted its judgment for that of the state court.

## V.    CONCLUSION

The district court has no authority under AEDPA to issue a writ of habeas corpus where the state courts' decisions were neither contrary to nor an unreasonable application of Supreme Court precedent nor based on unreasonable factual determinations. The Supreme Court instructs that as a condition for procurement of habeas corpus relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

17

No. 15-20169

fairminded disagreement." *Harrington*, 562 U.S. at 103. This is not such a case. The judgment of the district court is **REVERSED**.